UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                       NO: 13-101

MARK MORAD, ET AL.                           SECTION: R

**ORDER AND REASONS**

Defendant Mark Morad moves the Court to dismiss the indictment or, alternatively, to compel production of grand jury transcripts based on alleged misrepresentations made by the government to the grand jury.[1] He also moves to dismiss the indictment based on claims of multiplicity and equitable estoppel.[2] The Court addresses these motions in a single order because they implicate similar factual and legal issues. For the following reasons, the Court DENIES both of Morad's motions.

I.   **BACKGROUND**

On May 14, 2013, this Court unsealed a two-count indictment against Morad and four other individuals -- Alvin Darby, Barbara Smith, Demetrias Temple, and Nicole Oliver -- alleging conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349, and conspiracy to pay and receive health care kickbacks in violation of 18 U.S.C. § 371.[3]

---

[1]   R. Doc. 51.

[2]   R. Doc. 52.

[3]   R. Doc. 1.

The indictment charges that Morad was the owner of three corporations "purportedly engaged in the business of providing home health services to Medicare beneficiaries."[4] Temple and Oliver allegedly recruited Medicare beneficiaries so that they could be referred to Morad's providers "for home health services that were medically unnecessary, and [that] in some cases were not rendered."[5] Darby and Smith, both medical doctors, allegedly examined the beneficiaries, referred them to Morad's providers, and executed the necessary paperwork so that Morad could bill Medicare for the home health services that were either unnecessary or not rendered at all.[6] In return, Morad allegedly paid kickbacks to Temple and Oliver for each referral and passed along the Medicare payments for the unnecessary services to Darby and Smith.[7] The indictment also charges that the five defendants submitted fraudulent claims to Medicare by billing for medically unnecessary skilled nursing services.[8] Between April 2005 and December 2012, Morad's three providers allegedly billed Medicare for $49,515,565.90 and were paid $44,792,959.78.[9]

---

[4]    *Id.* at 5-6.

[5]    *Id.* at 9.

[6]    *Id.*

[7]    *Id.*

[8]    *Id.*

[9]    *Id.* at 5-6.

On August 30, 2013, Morad moved to dismiss the indictment. On September 19, 2013, the United States filed a superseding indictment, which added an additional defendant and counts of money laundering, conspiracy to falsify records in a federal investigation, and falsification of records in a federal investigation.[10] Counts 1 and 2 of the superseding indictment -- the counts at issue here -- are essentially unchanged from the initial indictment.

## II.   MOTION FOR PRODUCTION OF GRAND JURY TRANSCRIPTS

The primary thrust of Morad's motion to dismiss the indictment, or alternatively for production of grand jury transcripts,[11] is that the government misstated the law in its instructions to the grand jury. Specifically, Morad argues (1) that the government provided the grand jury with an erroneous definition of the word "homebound"; and (2) that the government erroneously instructed the grand jury regarding the "safe harbor" provision of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), which provides an exemption from prosecution for payments made by an employer to an employee "for employment in the provision of covered items or services."

---

[10]    R. Doc. 54.

[11]    R. Doc. 51.

3

A.   **Legal Standard**

Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) permits the court to "authorize disclosure -- at a time, in a manner, and subject to any other conditions that it directs -- of a grand jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." But grand jury proceedings are presumptively secret. Fed. R. Crim. P. 6(e); *see also Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979) ("We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."); *Dennis v. United States*, 384 U.S. 855, 869 (1966) (noting the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts"). And they enjoy a presumption of regularity. *See United States v. Johnson*, 319 U.S. 503, 513 (1943). Accordingly, in view of these well-established presumptions, the party seeking disclosure must show that a "particularized need" exists for the record. *Douglas Oil*, 441 U.S. at 223; *United States v. Miramontez*, 995 F.2d 56, 59 (5th Cir. 1993); *see also United States v. R. Enters., Inc.*, 498 U.S. 292, 300-01 (1991) (presumption of regularity in grand jury proceedings may be rebutted only by "particularized proof of irregularities in the grand jury process"); *Izen v. Catalina*, 256 F.3d 324, 329-330 (5th Cir. 2001) (district court "may properly order release of grand jury materials where a party demonstrates

4

with particularity a 'compelling necessity' for the materials"). Even when disclosure is permitted, it must be done "discretely and limitedly." *Dennis*, 384 U.S. at 869 (citing *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683 (1958)).

To meet the burden of demonstrating particularized need, a defendant must show that (1) the material he seeks is needed to avoid a possible injustice in another judicial proceeding; (2) the need for disclosure is greater than the need for continued secrecy; and (3) his request is structured to cover only material so needed. *Miramontez*, 995 F.2d at 59 (citing *Douglas Oil*, 441 U.S. at 221-22).

## B.   Definition of "Homebound"

Morad's contention that the government erroneously instructed the grand jury on the meaning of "homebound" is entirely speculative. Morad simply states that, based on discovery provided by the United States, "it is apparent that the Government erroneously believes that a patient cannot leave the home to qualify for home health services."[12] Morad discusses his interpretation of the word "homebound," then states that "[i]t is not speculative to presume that the Government did not provide the grand jury with these clarifications, refinements, and limitations on the criteria of 'homebound.'"[13] Morad's bald

---

[12]   R. Doc. 51-1 at 2.

[13]   *Id*. at 5.

assertion that the United States failed to properly instruct the grand jury on this subject is insufficient to overcome the presumption of regularity that attaches to grand jury proceedings. *See Anilao v. Spota*, 918 F. Supp. 2d 157, 174 (E.D.N.Y 2013) ("unspecific allegations of need or mere speculation are not adequate" to show particularized need for disclosure of grand jury transcripts); *United States v. Chamberlin*, No. 09-CR-6169CJS, 2010 WL 1904500, at *4 (W.D.N.Y. May 12, 2010) ("speculative assertion that the grand jury was improperly instructed" is "wholly insufficient to overcome the rule of secrecy in grand jury proceedings"); *United States v. Stein*, 429 F. Supp. 2d 633, 639-40 (S.D.N.Y. 2006) (mere "concern[]" that the government failed to properly instruct the grand jury on the applicable law, even if based on public statements made by government attorneys, is "not sufficient to overcome the 'presumption of regularity' afforded to grand jury proceedings"); *cf. United States v. Ho*, No. 08-337, 2009 WL 2591345, at *4-5 (D. Haw. Aug. 20, 2009) (conducting *in camera* review of grand jury transcripts after government attorney's on-the-record comments strongly suggested that his view of the law contradicted Supreme Court precedent).

## C.   The Safe Harbor Provision

The safe harbor provision is an affirmative defense. *United States v. Robinson*, 505 F. App'x 385, 387 (5th Cir. 2013); *United*

*States v. Job*, 387 F. App'x 445, 455 (5th Cir. 2010). The government is not required to present evidence of affirmative defenses to the grand jury. *United States v. Vasquez*, No. 11-26, 2012 U.S. Dist. LEXIS 19927, at *9 (D. Or. Feb. 15, 2012); *see also United States v. Gardner*, 860 F.2d 1391, 1395 (7th Cir. 1988). Thus, Morad's claim that the government improperly instructed the grand jury regarding the safe harbor provision depends on not one, but two levels of speculation: first, he must assume that the government described the safe harbor defense to the grand jury, and second, he must assume that the government did so incorrectly. Again, Morad points to no real evidence to support his speculation. Instead, he simply states that his counsel's conversations with government attorneys has led counsel to believe that the government's interpretation of the state harbor provision is erroneous and that the government conveyed that erroneous interpretation to the grand jury. This bald assertion is insufficient to show a "particularized need" for disclosure of grand jury transcripts. *See, e.g.*, *Stein*, 429 F. Supp. 2d at 639-40.

**D.    Conclusion**

At bottom, Morad's argument with respect to both the definition of "homebound" and the safe harbor provision appears to be the following: the United States' evidence is so weak that it could not *possibly* have instructed the grand jury correctly

7

and still obtained an indictment.[14] *Cf. United States v. Williams*, 504 U.S. 36, 54 (1992) ("A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was 'incomplete' or 'misleading.'"). But it is black-letter law that

> [a] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits.

*United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975) (citing *Costello v. United States*, 350 U.S. 359, 363 (1956)); *see also Williams*, 504 U.S. at 54 (noting that "'a challenge to the reliability or competence of the evidence presented to the grand jury' will not be heard" (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988))); *United States v. Calandra*, 414 U.S. 338, 345 (1974) (same).

Because Morad has failed to make a sufficient showing that production of grand jury transcripts is warranted, dismissal of the indictment is *a fortiori* unwarranted. *See Bank of Nova Scotia*, 487 U.S. at 254 (in order to obtain dismissal of indictment, defendant must show both that there were errors in the grand jury proceeding *and* that the errors prejudiced the

---

[14]    *See* R. Doc. 51-1 at 11 ("The Government could not have given such correct instruction, and presented evidence on employment, and still have obtained a probable cause Indictment.").

defendant). Thus, Morad's first motion must be denied in its
entirety.

### III. MOTION TO DISMISS ON GROUNDS OF MULITPLICITY AND EQUITABLE ESTOPPEL

Morad contends that the indictment is multiplicitous because
"the core of Count 1 [conspiracy to commit healthcare fraud],
from Mr. Morad's standpoint, is the alleged payment of
kickbacks," which is the same illegal conduct charged in Count 2
(conspiracy to violate the Anti-Kickback Statute).[15] He then
argues that he cannot be prosecuted for the alleged payment of
kickbacks because the government led him to believe that his
actions were covered by the "safe harbor" provision of the Anti-
Kickback statute, 42 U.S.C. § 1320a-7b(b).

### A.   Multiplicity

The Double Jeopardy Clause of the United States Constitution
provides that no person shall "be subject for the same offence to
be twice put in jeopardy of life or limb." U.S. Const. amend. V.
A multiplicitous indictment -- that is, an indictment charging a
single offense in multiple counts -- raises Double Jeopardy
concerns because of the "possibility that the defendant will
receive more than one sentence for a single offense." *United
States v. Reedy*, 304 F.3d 358, 363 (5th Cir. 2002). When
overlapping statutory provisions create the risk of multiplicity,

---

[15]    R. Doc. 52-1 at 2.

"[t]he test for determining whether the same act or transaction constitutes two offenses or only one is whether conviction under each statutory provision requires proof of an additional fact which the other does not." *Id.* (alteration in original). This test is derived from the Supreme Court's decision in *Blockburger v. United States*, 284 U.S. 299 (1932). Application of the *Blockburger* test "focuses on the statutory elements of the offense," and "[i]f each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Albernaz v. United States*, 450 U.S. 333, 338 (1981) (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975)). When an indictment charges violation of a general conspiracy statute, the relevant elements of the violation for purposes of the *Blockburger* test include the elements of the specific substantive offense that the defendant has conspired to commit. *United States v. Arlt*, 252 F.3d 1032, 1038 (2d Cir. 2001) ("When applying the *Blockburger* test in a case in which a defendant is convicted under [18 U.S.C.] § 371, the element that we must consider is not 'any offense against the United States' but rather the specific substantive offense that the defendant has conspired to commit . . . ."); *see also Iannelli*, 420 U.S. at 785 n.17 (applying this principle in dicta).

Morad is charged with a violation of two conspiracy statutes: 18 U.S.C. § 1349 (Count 1), and 18 U.S.C. § 371 (Count

2). Section 1349 provides that "[a]ny person who attempts or conspires to commit any offense under this chapter [entitled "Mail Fraud and Other Fraud Offenses"] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." The indictment alleges that the defendants violated § 1349 by conspiring to violate 18 U.S.C. § 1347, which makes it illegal to "knowingly and willfully execute, or attempt to execute, any scheme or artifice to defraud any health care benefit program . . . in connection with the delivery of or payment for heath care benefits, items or services."

Section 371, a general conspiracy statute, provides in relevant part:

> If two or more persons conspire either to commit an offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

The indictment alleges that Morad and the other defendants violated § 371 by conspiring to violate the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), which criminalizes the payment or receipt of remuneration for referrals in connection with federal health care programs.

Here, the *Blockburger* test is satisfied. In order to prove its case with regard to Count 1, the government must show that Morad conspired with others to "knowingly and willfully execute[]

11

. . . a scheme or artifice to defraud a[] health care benefit program . . . in connection with the delivery of or payment for health care benefits, items, or services." In order to prove its case with regard to Count 2, the government must show that Morad conspired with others to knowingly and willfully pay remuneration in exchange for patient referrals. Count 1 requires proof that the defendants endeavored to defraud the Medicare program, whereas Count 2 does not; similarly, Count 2 requires proof that the defendants conspired to pay or receive kickbacks in arranging for items to be reimbursed by Medicare, whereas Count 1 does not. To put it simply, one can commit fraud against Medicare without paying kickbacks, and one can pay kickbacks without committing fraud. *Cf. United States v. Ngari*, 828 F. Supp. 2d 825, 831-32 (M.D. La. 2011) (holding that an indictment charging conspiracy to commit healthcare fraud in violation of 18 U.S.C. § 1349 and conspiracy to pay and receive health care kickbacks in violation of 18 U.S.C. § 371 was not multiplicitous under *Blockburger*).

Morad relies heavily on *United States v. Ogba*, 526 F.3d 214 (5th Cir. 2008), but that case is inapposite. In *Ogba*, the defendant had been convicted under both the health care fraud statute and the Anti-Kickback Statute. *Id.* at 232. The Fifth Circuit explained that, "if [defendant]'s healthcare fraud conviction were based entirely on proof of his receipt of kickbacks, which he did dishonestly, then a conviction for illegal remuneration is a lesser included offense of healthcare

12

fraud." *Id.* at 234. In such a scenario, a conviction for both illegal remuneration and healthcare fraud would violate the Double Jeopardy Clause. Because the trial court had employed a general verdict form that did not allow the appellate court to determine whether the healthcare fraud conviction was based entirely on the evidence relating to kickbacks, the Fifth Circuit "could not with the requisite certainty say" that the defendant's two convictions were constitutionally permissible. *Id.* at 236.

Here, in contrast, Count 1 of the indictment alleges that Morad took actions besides paying kickbacks -- paying Smith and Darby for medical assessments and home visits (payments not classified as kickbacks) in return for their fraudulently certifying patients as eligible for home health services that were not medically necessary or not performed and submitting fraudulent claims for skilled nursing services that were not medically necessary or not performed -- in order to effectuate the conspiracy to commit healthcare fraud. Moreover, the conspiracy alleged in Count 1 was designed to do much more than facilitate the payment of kickbacks to Temple and Oliver; Morad's corporations profited millions from the scheme. In other words, Count 1 is not "based entirely" on allegations of violations of the Anti-Kickback Statute. Furthermore, Count 2 (the kickback conspiracy count) does not name the doctors, but names only Morad, Temple, and Oliver, and states that the purpose of the conspiracy was to pay and receive illegal kickbacks and bribes in

exchange for providing Medicare beneficiary information that was used to submit claims to Medicare. Thus, *Ogba*, which involved a challenge to a conviction based on a general verdict, is inapposite. *Ogba* did not implicate the indictment. Its holding can be addressed simply by directing the jury to identify the theory or theories of Medicare fraud it relies on if it reaches a verdict of guilty on Count 1. The indictment is not multiplicitous.

## B. Equitable Estoppel

The Fifth Circuit has described the doctrine of equitable estoppel as follows:

> The defense of entrapment by estoppel is applicable when a government official or agent *actively assures* a defendant that certain conduct is legal and the defendant reasonably relies on that advice and continues or initiates the conduct. *Cox v. Louisiana*, 379 U.S. 559 (1965) (convictions for demonstrating near courthouse reversed where highest police officials of city, in presence of sheriff and mayor, gave demonstrators permission to picket across the street from courthouse); *Raley v. Ohio*, 360 U.S. 423 (1959) (convictions for failure to testify reversed because inquiring body told defendants they could invoke Fifth Amendment). The defense is a narrow exception to the general rule that ignorance of the law is no excuse and is based on fundamental fairness concerns of the Due Process Clause. The focus of the inquiry is on the conduct of the government not the intent of the accused.

*United States v. Spires*, 79 F.3d 464, 466 (5th Cir. 1996) (citation omitted) (emphasis added).

The doctrine of equitable estoppel is not applicable to this case because Morad has pointed to no evidence that he was

"actively assured" by a government actor that his conduct was legal. *Cf. United States v. Pa. Indus. Chem. Corp.*, 411 U.S. 655, 673-74 (1973) (defendant entitled to introduce evidence showing that it was "*affirmatively misled* by the responsible administrative agency into believing that the law did not apply" to the defendant's conduct) (emphasis added); *Cox*, 379 U.S. at 571; *Raley*, 360 U.S. at 437-38. Insofar as Morad purports to argue that he honestly but erroneously thought that the safe harbor provision applied to his conduct in this case, that argument fails in light of "the general rule that ignorance of the law is no excuse." *Spires*, 79 F.3d at 466.

Accordingly, Morad's second motion must be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES both of the motions under consideration.

New Orleans, Louisiana, this 8th day of January, 2014.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE